# EXHIBIT 2

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

TREVOR WINWRITH LACKWOOD WILSON,

     *Plaintiff*,

vs.

MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A.,

     *Defendants*.

_____/

CASE NO. _____

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, TREVOR WINWRITH LACKWOOD WILSON (hereinafter "Plaintiff" or "MR. LACKWOOD WILSON"), by and through undersigned counsel, hereby files his Complaint against Defendants MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD., and MSC CRUISES, S.A., and as grounds thereof states as follows:

## GENERAL ALLEGATIONS

1.     This is a Complaint for damages in excess of the jurisdictional limits of the Circuit Court in and for Broward County, Florida.

2.     At all times material, the Plaintiff, TREVOR WINWRITH LACKWOOD WILSON ("MR. LACKWOOD WILSON"), was a seaman, crewmember, and/or business invitee onboard the cruise ship M/V *MSC VIRTUOSA*.

3.     On or about June 9, 2022, Plaintiff was hired by MSC MALTA SEAFARERS CO. LTD., to work in the position of a Kitchen Utility. However, once on board the M/V *MSC VIRTUOSA*, Plaintiff became under the direction and control of MSC CRUISE MANAGEMENT (UK) LTD., and/or MSC CRUISES, S.A.

## ▪ BILLERA LAW ▪

2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778

Page 1 of 54

4.      Under the general maritime law, Defendant, MSC CRUISE MANAGEMENT (UK) LTD., became Plaintiff's borrowing Jones Act employer and therefore owes Plaintiff all duties and benefits arising as his maritime employer, including the duties to provide a seaworthy vessel, to provide prompt, proper and adequate medical care, and to provide maintenance and cure until Plaintiff was at maximum medical cure.

5.      In the alternative, under the general maritime law, Defendant, MSC CRUISES, S.A., became Plaintiff's borrowing Jones Act employer and therefore owes Plaintiff all duties and benefits arising as his maritime employer, including the duties to provide a seaworthy vessel, to provide prompt, proper and adequate medical care, and to provide maintenance and cure until Plaintiff was at maximum medical cure.

6.      As Plaintiff's borrowing employer, MSC CRUISE MANAGEMENT (UK) LTD., provided, was required to provide, and/or undertook to provide Plaintiff's medical treatment, including maintenance and cure.

7.      In the alternative, as Plaintiff's borrowing employer, MSC CRUISES, S.A., provided, was required to provide, and/or undertook to provide Plaintiff's medical treatment, including maintenance and cure.

8.      Defendant, MSC MALTA SEAFARERS CO. LTD., is a foreign for-profit corporation with its principal place of business in Floriana, Malta. MSC MALTA SEAFARERS CO. LTD., engaged in substantial and not isolated activities within this state.

9.      At all times material, MSC MALTA SEAFARERS CO. LTD., personally or through an agent:

   a.   Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b.   Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state; and

    d. The acts of Defendant set out in this Complaint occurred in whole or in part of this county and/or state.

10.     Personal jurisdiction also lies over MSC MALTA SEAFARERS CO. LTD., because it has committed one or more of the acts stated in F.S. §§ 48.193, 48.081 and/or 48.181.

11.     Defendant, MSC CRUISE MANAGEMENT (UK) LTD., is a foreign for-profit corporation with its principal place of business in Uxbridge, London. MSC CRUISE MANAGEMENT (UK) LTD., engaged in substantial and not isolated activities within this state.

12.     At all times material, the Defendant MSC CRUISE MANAGEMENT (UK) LTD., personally or through an agent:

    a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state; and

    d. The acts of Defendant set out in this Complaint occurred in whole or in part of this county and/or state.

13.     Personal jurisdiction also lies over MSC CRUISE MANAGEMENT (UK) LTD., because it has committed one or more of the acts stated in F.S. §§ 48.193, 48.081 and/or 48.181.

14.     At all times material, MSC CRUISES, S.A., was the operator and/or bare boat charterer and/or owner *pro hac vice* of the cruise ship, M/V *MSC VIRTUOSA*.

15.     Defendant, MSC CRUISES, S.A., is a foreign corporation organized under the laws of Switzerland but is registered to do business in the state of Florida and it maintains a registered agent for service of process in Broward County, Florida: CT Corporation System, located at 1200 South Pine Island Road, Plantation, FL 33324.

16.     Further, MSC CRUISES, S.A., does business in Florida through its agent, MSC

Cruises (USA) Inc., located at: 6750 N. Andrews Ave. Suite 100, Ft. Lauderdale, FL 33309. Said

agent sells intangible personal property on MSC's behalf to individuals and/or business entities.

MSC CRUISES, S.A., is conclusively presumed to be both engaged in substantial and not isolated

activities within this state and operating, conducting, engaging in, or carrying on a business or

business venture in this state.

17.     At all times material, the Defendant MSC CRUISES, S.A., personally or through

an agent:

a. Operated, conducted, engaged in, or carried on a business venture in this state
   and/or county or had an office or agency in this state and/or county;
b. Had a registered agent for service of process in Broward County, Florida;

c. Was engaged in substantial activity within this state;

d. Operated vessels in the waters of this state; and

e. The acts of Defendant set out in this Complaint occurred in whole or in part of this
   county and/or state.

18.     Personal jurisdiction also lies over MSC CRUISES, S.A., because it has committed

one or more of the acts stated in F.S. §§ 48.193, 48.081 and/or 48.181.

19.     Moreover, MSC CRUISES, S.A., has a designated forum selection clause that

requires passenger injury claims to be litigated in the United States District Court for the Southern

District of Florida.

20.     In fact, MSC CRUISES, S.A. has a registered agent for service of process in the

State of Florida, located in Plantation, Broward County, Florida. Defendant has thereby consented

to jurisdiction in this state and venue in Broward County, Florida.

21.     Defendant, MSC CRUISES, S.A., was the owner and operator of the M/V *MSC*

*VIRTUOSA* at the time of Plaintiff's employment on said vessel. As the vessel owner, MSC

CRUISES, S.A., had the nondelegable duty to provide any crewmembers on board a seaworthy

vessel. MSC CRUISES, S.A., also had the duty to provide maintenance and cure to any crewmembers, including Plaintiff, injured while in the service of its vessel.

22.     At all times material hereto, one or all three of the Defendants was/were MR. LACKWOOD WILSON's employer(s), as they jointly controlled Plaintiff's work and/or conduct aboard the vessel.

23.     Once on board the M/V *MSC VIRTUOSA*, Plaintiff became the borrowed employee of MSC CRUISE MANAGEMENT (UK) LTD., under *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969). First, Plaintiff was assigned to work as a Kitchen Utility under an MSC CRUISE MANAGEMENT (UK) LTD., supervisor.

24.     Once Plaintiff was placed in his position on the M/V MSC VIRTUOSA, he was performing the work of MSC CRUISE MANAGEMENT (UK) LTD., as a Kitchen Utility.

25.     Although MSC MALTA SEAFARERS CO. LTD., was Plaintiff's nominal employer under his Employment Agreement, once Plaintiff joined the M/V MSC VIRTUOSA, it was agreed and clear that Plaintiff was working for MSC CRUISE MANAGEMENT (UK) LTD., under an MSC CRUISE MANAGEMENT (UK) LTD., supervisor and assisting MSC CRUISE MANAGEMENT (UK) LTD., in performing utility duties in its kitchens.

26.     When Plaintiff joined the vessel and learned that he was to work under MSC CRUISE MANAGEMENT (UK) LTD., rather than MSC MALTA SEAFARERS CO. LTD., he acquiesced to performing utility duties for MSC CRUISE MANAGEMENT (UK) LTD.

27.     Upon information and belief, all of Plaintiff's equipment, clothing, shoes, supplies, and food was provided by MSC CRUISE MANAGEMENT (UK) LTD., and not by MSC MALTA SEAFARERS CO. LTD.

28.     Although Plaintiff was hired to work as a seaman and crewmember for MSC

▪ **BILLERA LAW** ▪

**2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431** ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778
Page **5** of **54**

MALTA SEAFARERS CO. LTD., in fact he never performed any seaman's work directly under MSC MALTA SEAFARERS CO. LTD., and never performed any functions on the vessel as a crewmember, other than his work as a Kitchen Utility for MSC CRUISE MANAGEMENT (UK) LTD. In fact, one hundred percent of Plaintiff's work on the M/V *MSC VIRTUOSA* was under the control, supervision, and direction of MSC CRUISE MANAGEMENT (UK) LTD.

29.     Defendant MSC CRUISE MANAGEMENT (UK) LTD., had the right to terminate Plaintiff and was the entity that conducted reviews of Plaintiff's performance.

30.     Plaintiff was paid by MSC CRUISE MANAGEMENT (UK) LTD., not by MSC MALTA SEAFARERS CO. LTD. Under the *Ruiz* factors referenced *supra*, Plaintiff was the borrowed employee of MSC CRUISE MANAGEMENT (UK) LTD.

31.     That Plaintiff was the borrowed servant of MSC CRUISE MANAGEMENT (UK) LTD. is further established by the fact that, once Plaintiff was injured on board the M/V *MSC VIRTUOSA*, MSC CRUISE MANAGEMENT (UK) LTD., through its agents, directed Plaintiff's medical treatment, made all decisions regarding when and where Plaintiff would sign off, provided for his repatriation, and provided him medical care off the vessel.

32.     As Plaintiff's borrowing employer, Defendant MSC CRUISE MANAGEMENT (UK) LTD., had the nondelegable duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure.

33.     Alternatively, Defendant MSC CRUISE MANAGEMENT (UK) LTD., undertook the duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure, thereby becoming liable for any and all acts and/or omissions regarding the negligent provision of Plaintiff's medical care, maintenance and curative treatment.

34.     Defendant MSC CRUISE MANAGEMENT (UK) LTD. was neither a signatory

nor a named or intended beneficiary under the employment agreement between Plaintiff and MSC MALTA SEAFARERS CO. LTD. There is no privity of contract between Defendant MSC CRUISE MANAGEMENT (UK) LTD. and Plaintiff and there is no contractual bar to his bringing this suit in Florida State Court.

35.     In the alternative, once on board the M/V *MSC VIRTUOSA*, Plaintiff became the borrowed employee of MSC CRUISES, S.A., under *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969). First, Plaintiff was assigned to work as a Kitchen Utility under an MSC CRUISES, S.A., supervisor who reported directly to, and was under the supervision of MSC CRUISES, S.A.'s Director. All final orders therefore came from MSC CRUISES, S.A.

36.     Once Plaintiff was placed in his position on the M/V *MSC VIRTUOSA*, he was performing the work of MSC CRUISES, S.A., as a Kitchen Utility in areas owned and operated by MSC CRUISES S.A.

37.     Although MSC MALTA SEAFARERS CO. LTD., was Plaintiff's nominal employer under his Employment Agreement, once Plaintiff joined the M/V *MSC VIRTUOSA*, it was agreed and clear that Plaintiff was working for MSC CRUISES, S.A, under an MSC CRUISES, S.A., supervisor and assisting MSC CRUISES, S.A., performing utility duties in its kitchens.

38.     When Plaintiff joined the vessel and learned that he was to work under MSC CRUISES, S.A., rather than MSC MALTA SEAFARERS CO. LTD., he acquiesced to performing utility duties for MSC CRUISES, S.A.

39.     Upon information and belief, all of Plaintiff's equipment, clothing, shoes, supplies, and food was provided by MSC CRUISES, S.A., and not by MSC MALTA SEAFARERS CO. LTD.

▪ **BILLERA LAW** ▪

40.     Although Plaintiff was hired to work as a seaman and crewmember for MSC MALTA SEAFARERS CO. LTD., in fact he never performed any seaman's work directly under MSC MALTA SEAFARERS CO. LTD., and never performed any functions on the vessel as a crewmember, other than his work as a Kitchen Utility for MSC CRUISES, S.A. In fact, one hundred percent of Plaintiff's work on the M/V *MSC VIRTUOSA* was under the control, supervision, and direction of MSC CRUISES, S.A.

41.     Defendant MSC CRUISES, S.A., had the right to terminate Plaintiff and was the entity that conducted reviews of Plaintiff's performance.

42.     Plaintiff was paid by MSC CRUISES, S.A., not by MSC MALTA SEAFARERS CO. LTD. Under the *Ruiz* factors referenced *supra*, Plaintiff was the borrowed employee of MSC CRUISES, S.A.

43.     Defendant MSC CRUISES, S.A. was neither a signatory nor a named or intended beneficiary under the employment agreement between Plaintiff and MSC MALTA SEAFARERS CO. LTD. There is no privity of contract between Defendant MSC CRUISES, S.A. and Plaintiff and there is no contractual bar to his bringing this suit in Florida State Court.

44.     As Plaintiff's borrowing employer, Defendant MSC CRUISES, S.A., had the nondelegable duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure.

45.     Moreover, as the vessel owner, MSC CRUISES, S.A. had the nondelegable duty to provide maintenance and cure. Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1013 (5th Cir. 1994).

46.     MSC CRUISES, S.A., as the vessel owner also had the nondelegable duty to provide a seaworthy vessel.

47.     The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 30104, and the General Maritime Law of the United States.

48.     In the alternative, Plaintiff pleads that if this Court rules the General Maritime Law of the United States does not apply, the causes of action asserted in this Complaint arise under Panamanian law.

49.     Under the law of Panama, if a seafarer is injured or becomes ill in the course and scope of work two compensation claims are permitted. One is a contractually-based claim and the other is a negligence or fault-based claim. The contract of employment is the basic document for the contractual claim for benefits and compensation. The negligence or fault claim is an additional legal remedy that is available to the seafarer.

50.     The laws of Panama governing compensation for personal injury and wrongful death claims are applicable to all seafarers without distinction as to their citizenship or nationality

51.     Panama has adopted a disability table for different types of injuries, based on a percentage of the disability for the purposes of a contractual claim.

52.     Under Panamanian law, a Plaintiff is entitled to all proven damages arising out of a tort-based claim. Damages can be economic, loss of earnings, actual damages, and future medical expenses. A seafarer can also claim 'moral damages,' a term which includes damages for pain and suffering.

53.     Damages under Panamanian law are controlled by Civil Code Article 1644-A: The damage caused includes both material and moral damages.

54.     Under said Article, moral damage is understood as the affection that a person suffers in his feelings, affections, beliefs, decorum, honor, reputation, private life, configuration and physical appearance, or in the consideration that others have of him. When an unlawful act or

omission produces moral damage, the person responsible for the same will have the obligation to repair it, by means of a monetary indemnity, regardless of whether material damage has been caused, both in matters of contractual and non-contractual liability. In the case of contractual liability and if there is a penalty clause, the provisions of such clause shall apply.

55.     Article 1644-A holds that the same obligation to repair the moral damage attaches whether the liability arises from negligence, strict liability, or is caused by the State, the decentralized institutions of the State and the Municipality and their respective officials, according to Article 1645 of the Civil Code.

56.     The Article provides that the amount of the compensation will be determined by the judge taking into account the injured rights, the degree of responsibility, the economic situation of the responsible party, and that of the victim, as well as the other circumstances of the case.

57.     Civil Code Art. 1645 provides: The obligation imposed by Article 1644 is enforceable not only for one's own acts or omissions but also for those of the persons for whom one is liable.

58.     Art. 1644 places the burden on the plaintiff to establish the 4 elements of negligence, like any regular tort claim.

59.     The main elements for the purpose of calculating contractually-based compensation are: (a) the wages earned, including future increases; (b) the age of the plaintiff; (c) the number of working years until retirement; and (d) a percentage of the medically determined disability.

60.     The contractually based claim arises under Chapter 7, Title I of Law Decree No. 8 of 1998, Articles 80 through 83, CL-001, and/or Executive Decree 86 of 2006. The damages awarded under Decree No. 8 are in addition to any and all damages awarded for general negligence, which are provided for under Article 1644 of the Civil Code of Panama.

61.     Further, the Maritime Labour Convention 2006, which has been incorporate into Panamanian law, provides further obligations on the shipowner to provide a seaworthy vessel as well as prompt, proper and adequate medical care on board and shore side.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

62.     At all times material hereto and throughout his employment on the vessel, MR. LACKWOOD WILSON's shipboard duties included, but were not limited to, periods of consecutive and heavy lifting.

63.     Prior to coming to work for MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD., and/or MSC CRUISES, S.A., MR. LACKWOOD WILSON underwent a complete and thorough pre-employment examination in which he was given X-rays, ultrasounds, a head-to-toe physical examination by a doctor, blood tests, urine tests, and a full medical history was taken. Plaintiff was found fit for duty with no restrictions, no illnesses or injuries, and no limitations.

64.     During MR. LACKWOOD WILSON's employment with MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD., and/or MSC CRUISES, S.A., he was constantly required to bend, lift heavy items and stand for long periods of time. He was required to work ten to fourteen hours per day, seven days per week for a salary of approximately USD $750.00 per month, including bonuses.

65.     In early July, 2022, MR. LACKWOOD WILSON was in the performance of his duties as a Kitchen Utility onboard the M/V *MSC VIRTUOSA*. On said date, he was required to lift and carry an unreasonably large number of heavy trays of dishes because the vessel was understaffed.  Near the end of his shift that day, MR. LACKWOOD WILSON lifted a large, heavy tray of dishes that had been overloaded by another crewmember when he felt a sharp pain in his

stomach, lower back and right shoulder.

66.     MR. LACKWOOD WILSON reported his injuries to the infirmary. However, he was diagnosed with a strain and was sent back to work on full duty.

67.     On July 8, 2022, MR. LACKWOOD WILSON underwent an abdominal ultrasound which showed stomach eventration (a/k/a incisional hernia). He was then medically disembarked and sent home to Nicaragua on or about July 20, 2022.

68.     He was sent home without a medical referral and was required to pay for his shipboard illness on his own. He did not undergo a repair to his painful, incisional hernia until September 15, 2022, more than two months after his injury.

69.     During the time that MR. LACKWOOD WILSON was treating for his incisional hernia, he also complained of right shoulder pain and back pain. However, Defendants failed to provide Plaintiff any medical treatment for his shoulder or back, and said injuries have never been properly assessed or treated.

70.     MR. LACKWOOD WILSON remains in severe constant pain and is unable to perform the daily activities of living in any normal fashion.

71.     Defendants and the vessel have never followed up with him regarding his medical needs.

72.     Defendants and the vessel have never provided Plaintiff maintenance, i.e., either food and lodging or cash payments to allow him to survive while he recovers from his hernia surgery, or while he is treating for his lower back or shoulder.

73.     Defendants and the vessel failed to provide MR. LACKWOOD WILSON prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Plaintiff thereby became injured, and his underlying medical conditions became aggravated.

74.     MR. LACKWOOD WILSON has never been found to be at Maximum Medical Improvement ("MMI") for his conditions. As such, Plaintiff is entitled to receive maintenance and medical cure from Defendant in a timely and complete manner.

75.     The Third District Court of Appeal has described the doctrine of maintenance and cure as follows:

> Maintenance and cure is an ancient duty under the law of admiralty that arises against a shipowner in favor of a seaman who becomes ill, injured, or incapacitated, or whose condition becomes aggravated or enhanced for any reason, at least until the time that the seaman has achieved maximum medical recovery . . . Admiralty courts have traditionally been liberal in interpreting the scope of this duty . . . The seamen are wards of the Court and maintenance and cure should be afforded as long as there is any ambiguity or uncertainty about the continuation of that status . . . "The nature and foundations of the liability required that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes." *Aguilar v. Standard Oil Co.*, 318 US 724, 735, 63 S.Ct. 930, 87 LED. 1107 (1943).

*Duarte v. HOLLAND AMERICA LINE, NV*, 761 So.2d 367, 368 (Fla. 3d DCA 2000).

76.     The United States Supreme Court held that "the breadth and inclusiveness" of a shipowner's duty to pay maintenance and cure "assure its easy and ready administration for [i]t has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Vella v. Ford Motor Co.*, 421 U.S. 1, 95 S. Ct. 1381, LED. 2d 682 (1975). An injured seaman is entitled to every benefit of the doubt when there is any ambiguity regarding whether maintenance and cure should be paid. *Vaughan v. Atkinson*, 369 U.S. 527, 530-331, 82 S.Ct.997, 999-1000, 8 LED.2d 88 (1962); Aguilar *v. Standard Oil Co.*, 318 U.S. 724, 87 LED. 1107, 63 S.Ct. 930 (1943). See also, *Atlantic Sounding Co., Inc. v. Townsend*, 29 S.Ct. 2561 (2009).

**COUNT I- GENERAL MARITIME LAW NEGLIGENCE AGAINST MSC MALTA**

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through

▪ **BILLERA LAW** ▪

seventy-six (76) as though they were fully set forth herein and further alleges:

77.     Defendant, MSC MALTA SEAFARERS CO. LTD. ("MSC MALTA"), as MR.

LACKWOOD WILSON's Jones Act employer owed Plaintiff duties of care, including but not

limited to the following:

    a.  The duty to provide Plaintiff with a reasonably safe working environment;

    b.  The duty to provide Plaintiff with reasonably safe conditions in which to work;

    c.  The duty to provide, implement, and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition;

    d.  The duty to provide prompt, proper and adequate medical care;

    e.  The duty to instruct and/or train its crewmembers to perform tasks with a procedure, method or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and

    f.  The duty to implement safe and reasonable work methods.

78.     In early July, 2022, and thereafter, MR. LACKWOOD WILSON was severely

injured as a directly and proximate result of MSC MALTA's breach of the above duties as follows:

    a.  Failure to provide a safe place to work by failure to properly assess the risks of the various job tasks and activities the Plaintiff was assigned to during the times he was working onboard the M/V *MSC VIRTUOSA*. See *Cabezas v. United States*, 2007 U.S. Dist. 72625 (N.D. Ca. 2007); and/or

    b.  Failure to provide a safe place to work by failing to implement appropriate safety precautions and procedures based on ergonomic studies reflecting the risk of injuries for the various types of job tasks and activities crewmembers are required to perform onboard the vessels; and/or

    c.  By Failure to conduct appropriate ergonomic studies of the work place and implement safe methods and practices of work in order to avoid injuries; and/or

    d.  Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

    e.  Failure to properly evaluate the different job tasks and activities required of the Plaintiff in order to implement appropriate safety precautions to avoid the type of injuries Plaintiff suffered as a result of the excessive and physically taxing jobs and activities; and/or

f.  Negligently assigning Plaintiff to a duty that involved unreasonable risk of harm. See *Moreno v. Grand Victoria Casino*, 94 F.Supp.2d 833 (N.D. II 2000); and/or

g.  Failure to provide a safe place to work by assignment of the Plaintiff to job tasks and activities that posed unreasonable risks of injury to the Plaintiff; and/or

h.  By failure to properly assess the work place for hazards and correct the hazards; and/or

i.  Failure to provide adequate safety measures to guard against known risks of injury to Plaintiff; and/or

j.  Failing to provide a safe work place by failing to implement a reasonable work schedule which would not have required the Plaintiff to work an excessive number of hours, seven days a week without adequate rest breaks and exercises; and/or

k.  By requiring the Plaintiff to work an excessive amount of hours each day which caused him to over-exert himself to the point of suffering severe injury to his back, right shoulder and stomach; and/or

l.  By not allowing adequate rest breaks which resulted in over-exertion, which caused the Plaintiff to suffer severe injury to his back, right shoulder and stomach; and/or

m.  By assignment of the Plaintiff to such a multitude of tasks, that required excessive amounts of lifting, bending, stooping, twisting, and carrying items on a repetitive basis, in a hurried fashion, which put the Plaintiff's body at risk for suffering overexertion type injuries to his back, right shoulder and stomach, which in fact occurred; and/or

n.  Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their reoccurrence and more particularly Plaintiff's accident; and/or

o.  The failure to provide, implement and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition; and/or

p.  The failure to instruct and/or train its crewmembers to perform tasks with a procedure, method, or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and/or

q.  Failure to provide Plaintiff, reasonable hours of employment to not overwork them to the point of not being physically fit to carry out their duties, as Defendant's crew, including Plaintiff, were overworked to the point of fatigue; and/or

r.  Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Plaintiff, while engaged in the course of his employment on said vessel; and/or

s.  Failure to adhere to the Seafarers' Hours of Work and the Manning of Ships Convention, l996, with respect to the hours of work and rest, as well as other standards, such as ILO 147; and/or

t.  Failure to have a proper, adequate and safe Safety Management System Manual and/or violating the International Safety Management Code; and/or

u.  Failing to consider Plaintiff's physical limitations in assigning him to duties for which he was not physically suited. See *Fletchis v. Union Pacific Railroad*, 621 F. 2d 902, 909 (8th Cir. 1980); Moreno, supra; and/or

v.  Failure to promptly, properly, and adequately diagnose and treat Plaintiff's underlying medical condition when he presented to the vessel's medical center and as he continued to complain as his medical condition and related injuries became aggravated; and/or

w.  Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical conditions and related injuries; and/or

x.  Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers onboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

y.  Failure to provide a safe place to work by failure to have the ship's doctors, shoreside doctors and supervisors communicate with each other about the physical capacities of the Plaintiff and the type of complaints he was expressing regarding his physical condition, and failure to properly evaluate his physical injuries and capabilities and then determine the appropriateness of the various job tasks and activities that would be required of the Plaintiff if he was returned to work; and/or

z.  Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care; and/or

aa. Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured; and/or

bb. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work; and/or

cc. Creating a work environment where crewmembers are encouraged to return to work with injuries; and/or

dd. Failure to warn Plaintiff of the dangers of working with a medical injury; and/or

ee. Negligently assigning Plaintiff to work that caused injury to his back, right shoulder and stomach; and/or

ff.  Negligently requiring Plaintiff to stand for long periods of time; and/or

gg.  Negligently requiring Plaintiff to lift overloaded trays, which were unreasonably heavy; and/or

hh.  Failure to provide the Plaintiff with protective equipment to prevent injury to his back, right shoulder and stomach; and/or

ii.  Failure to provide assistive devices including but not limited to a trolley; and/or

jj.  Negligently sending Plaintiff back to work on full duty despite that he was suffering from an injury; and/or

kk.  Requiring Plaintiff to perform kitchen duty alone, without assistance and/or under severe time pressure; and/or

ll.  By vicarious liability of the crewmembers who overloaded the trays;

mm.  By failing to provide prompt, proper, and adequate medical care and treatment, which Defendant in failing to provide Plaintiff adequate time off work and light duty following the injuries to his back, right shoulder and stomach which caused, contributed to or aggravated his condition; and/or

nn.  Other acts and/or omissions constituting negligence that will be found in discovery and proven at trial.

79.  Defendant, MSC MALTA, knew or should have known of the foregoing conditions and had the opportunity to correct them prior to MR. LACKWOOD WILSON's accident/injury.

80.  Defendant, MSC MALTA, had actual and/or constructive notice that the duties assigned to Plaintiff without proper equipment such as a trolley or other assistance or rest was dangerous prior to Plaintiff's injury.

81.  As a direct and proximate result of the negligence of the Defendant, its agents and/or employees, MR. LACKWOOD WILSON, was caused to suffer severe bodily injury, was and still is incapacitated from work, will in the future be unable to engage in his vocation as a crewmember and/or any other occupation requiring the full use of his body and limbs.

82.  As a further direct and proximate result of this injury suffered by MR. LACKWOOD WILSON, the Plaintiff has and will suffer pain and mental anguish and has incurred

medical expenses for the alleviation of his injuries, suffered a diminishment of earning capacity as well as lost wages and has lost the enjoyment of leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

### COUNT II- JONES ACT NEGLIGENCE AGAINST MSC UK

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

83.     Defendant, MSC CRUISE MANAGEMENT (UK) LTD. ("MSC UK"), as MR. LACKWOOD WILSON's borrowing Jones Act employer owed Plaintiff duties of care, including but not limited to the following:

   a.   The duty to provide Plaintiff with a reasonably safe working environment;

   b.   The duty to provide Plaintiff with reasonably safe conditions in which to work;

   c.   The duty to provide, implement, and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition;

   d.   The duty to provide prompt, proper and adequate medical care;

   e.   The duty to instruct and/or train its crewmembers to perform tasks with a procedure, method or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and

   f.   The duty to implement safe and reasonable work methods.

84.     In early July, 2022, and thereafter, MR. LACKWOOD WILSON was severely injured as a directly and proximate result of MSC UK's breach of the above duties as follows:

   a.   Failure to provide a safe place to work by failure to properly assess the risks of the

▪ **BILLERA LAW** ▪

**2201 NW Corporate Blvd., Ste. 200, Boca Raton, FL 33431 ▪ TEL #(561) 500-7777 ▪ FAX #(561) 500-7778**
Page **18** of 54

various job tasks and activities the Plaintiff was assigned to during the times he was working onboard the M/V *MSC VIRTUOSA*. See *Cabezas v. United States*, 2007 U.S. Dist. 72625 (N.D. Ca. 2007); and/or

b.  Failure to provide a safe place to work by failing to implement appropriate safety precautions and procedures based on ergonomic studies reflecting the risk of injuries for the various types of job tasks and activities crewmembers are required to perform onboard the vessels; and/or

c.  By Failure to conduct appropriate ergonomic studies of the work place and implement safe methods and practices of work in order to avoid injuries; and/or

d.  Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

e.  Failure to properly evaluate the different job tasks and activities required of the Plaintiff in order to implement appropriate safety precautions to avoid the type of injuries Plaintiff suffered as a result of the excessive and physically taxing jobs and activities; and/or

f.  Negligently assigning Plaintiff to a duty that involved unreasonable risk of harm. See *Moreno v. Grand Victoria Casino*, 94 F.Supp.2d 833 (N.D. Il 2000); and/or

g.  Failure to provide a safe place to work by assignment of the Plaintiff to job tasks and activities that posed unreasonable risks of injury to the Plaintiff; and/or

h.  By failure to properly assess the work place for hazards and correct the hazards; and/or

i.  Failure to provide adequate safety measures to guard against known risks of injury to Plaintiff; and/or

j.  Failing to provide a safe work place by failing to implement a reasonable work schedule which would not have required the Plaintiff to work an excessive number of hours, seven days a week without adequate rest breaks and exercises; and/or

k.  By requiring the Plaintiff to work an excessive amount of hours each day which caused him to over-exert himself to the point of suffering severe injury to his back, right shoulder and stomach; and/or

l.  By not allowing adequate rest breaks which resulted in over-exertion, which caused the Plaintiff to suffer severe injury to his back, right shoulder and stomach;

m.  By assignment of the Plaintiff to such a multitude of tasks, that required excessive amounts of lifting, bending, stooping, twisting, and carrying items on a repetitive basis, in a hurried fashion, which put the Plaintiff's body at risk for suffering overexertion type injuries to his back, right shoulder and stomach, which in fact occurred;

▪ **BILLERA LAW** ▪

n. Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their reoccurrence and more particularly Plaintiff's accident; and/or

o. The failure to provide, implement and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition; and/or

p. The failure to instruct and/or train its crewmembers to perform tasks with a procedure, method, or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and/or

q. Failure to provide Plaintiff, reasonable hours of employment to not overwork them to the point of not being physically fit to carry out their duties, as Defendant's crew, including Plaintiff, were overworked to the point of fatigue; and/or

r. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Plaintiff, while engaged in the course of his employment on said vessel; and/or

s. Failure to adhere to the Seafarers' Hours of Work and the Manning of Ships Convention, l996, with respect to the hours of work and rest, as well as other standards, such as ILO 147; and/or

t. Failure to have a proper, adequate and safe Safety Management System Manual and/or violating the International Safety Management Code; and/or

u. Failing to consider Plaintiff's physical limitations in assigning him to duties for which he was not physically suited. See *Fletchis v. Union Pacific Railroad*, 621 F. 2d 902, 909 (8th Cir. 1980); Moreno, supra; and/or

v. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's underlying medical condition when he presented to the vessel's medical center and as he continued to complain as his medical condition and related injuries became aggravated; and/or

w. Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical conditions and related injuries; and/or

x. Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers onboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

y. Failure to provide a safe place to work by failure to have the ship's doctors, shoreside doctors and supervisors communicate with each other about the physical capacities of the Plaintiff and the type of complaints he was expressing regarding his physical condition, and failure to properly evaluate his physical injuries and capabilities and then determine the appropriateness of the various job tasks and activities that would be required of the Plaintiff if he was returned to work; and/or

z. Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care; and/or

aa. Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured; and/or

bb. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work; and/or

cc. Creating a work environment where crewmembers are encouraged to return to work with injuries; and/or

dd. Failure to warn Plaintiff of the dangers of working with a medical injury; and/or

ee. Negligently assigning Plaintiff to work that caused injury to his back, right shoulder and stomach; and/or

ff. Negligently requiring Plaintiff to stand for long periods of time; and/or

gg. Negligently requiring Plaintiff to lift overloaded trays, which were unreasonably heavy; and/or

hh. Failure to provide the Plaintiff with protective equipment to prevent injury to his back, right shoulder and stomach; and/or

ii. Failure to provide assistive devices including but not limited to a trolley; and/or

jj. Negligently sending Plaintiff back to work on full duty despite that he was suffering from an injury; and/or

kk. Requiring Plaintiff to perform kitchen duty alone, without assistance and/or under severe time pressure; and/or

ll. By vicarious liability of the crewmembers who overloaded the trays;

mm. By failing to provide prompt, proper, and adequate medical care and treatment, which Defendant in failing to provide Plaintiff adequate time off work and light duty following the injury to his back, right shoulder and stomach which caused, contributed to or aggravated his condition; and/or

nn. Other acts and/or omissions constituting negligence that will be found in discovery and proven at trial.

85. Defendant, MSC UK, knew or should have known of the foregoing conditions and

had the opportunity to correct them prior to MR. LACKWOOD WILSON's accident/injury.

86.     Defendant, MSC UK, had actual and/or constructive notice that the duties assigned to Plaintiff without proper equipment such as a trolley or other assistance or rest was dangerous prior to Plaintiff's injury.

87.     As a direct and proximate result of the negligence of the Defendant, its agents and/or employees, MR. LACKWOOD WILSON, was caused to suffer severe bodily injury, was and still is incapacitated from work, will in the future be unable to engage in his vocation as a crewmember and/or any other occupation requiring the full use of his body and limbs.

88.     As a further direct and proximate result of this injury suffered by MR. LACKWOOD WILSON, the Plaintiff has and will suffer pain and mental anguish and has incurred medical expenses for the alleviation of his injuries, suffered a diminishment of earning capacity as well as lost wages and has lost the enjoyment of leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT III- JONES ACT NEGLIGENCE AGAINST MSC S.A.

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

89.     Defendant, MSC CRUISES, S.A. ("MSC S.A."), as MR. LACKWOOD WILSON's borrowing Jones Act employer owed Plaintiff duties of care, including but not limited to the following:

a.   The duty to provide Plaintiff with a reasonably safe working environment;

b. The duty to provide Plaintiff with reasonably safe conditions in which to work;

c. The duty to provide, implement, and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition;

d. The duty to provide prompt, proper and adequate medical care;

e. The duty to instruct and/or train its crewmembers to perform tasks with a procedure, method or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and

f. The duty to implement safe and reasonable work methods.

90. In early July, 2022, and thereafter, MR. LACKWOOD WILSON was severely injured as a directly and proximate result of MSC S.A.'s breach of the above duties as follows:

a. Failure to provide a safe place to work by failure to properly assess the risks of the various job tasks and activities the Plaintiff was assigned to during the times he was working onboard the M/V *MSC VIRTUOSA*. See *Cabezas v. United States*, 2007 U.S. Dist. 72625 (N.D. Ca. 2007); and/or

b. Failure to provide a safe place to work by failing to implement appropriate safety precautions and procedures based on ergonomic studies reflecting the risk of injuries for the various types of job tasks and activities crewmembers are required to perform onboard the vessels; and/or

c. By Failure to conduct appropriate ergonomic studies of the work place and implement safe methods and practices of work in order to avoid injuries; and/or

d. Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

e. Failure to properly evaluate the different job tasks and activities required of the Plaintiff in order to implement appropriate safety precautions to avoid the type of injuries Plaintiff suffered as a result of the excessive and physically taxing jobs and activities; and/or

f. Negligently assigning Plaintiff to a duty that involved unreasonable risk of harm. See *Moreno v. Grand Victoria Casino*, 94 F.Supp.2d 833 (N.D. Il 2000); and/or

g. Failure to provide a safe place to work by assignment of the Plaintiff to job tasks and activities that posed unreasonable risks of injury to the Plaintiff; and/or

h. By failure to properly assess the work place for hazards and correct the hazards;

i. Failure to provide adequate safety measures to guard against known risks of injury to Plaintiff; and/or

j. Failing to provide a safe work place by failing to implement a reasonable work schedule which would not have required the Plaintiff to work an excessive number of hours, seven days a week without adequate rest breaks and exercises; and/or

k. By requiring the Plaintiff to work an excessive amount of hours each day which caused him to over-exert himself to the point of suffering severe injury to his back, right shoulder and stomach; and/or

l. By not allowing adequate rest breaks which resulted in over-exertion, which caused the Plaintiff to suffer severe injury to his back, right shoulder and stomach; and/or

m. By assignment of the Plaintiff to such a multitude of tasks, that required excessive amounts of lifting, bending, stooping, twisting, and carrying items on a repetitive basis, in a hurried fashion, which put the Plaintiff's body at risk for suffering overexertion type injuries to his back, right shoulder and stomach which in fact occurred; and/or

n. Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their reoccurrence and more particularly Plaintiff's accident; and/or

o. The failure to provide, implement and/or enforce safety rules, policies, and procedures to keep the vessel in a safe condition; and/or

p. The failure to instruct and/or train its crewmembers to perform tasks with a procedure, method, or policy that would avoid injuries, when Defendant knew or should have known that said tasks would result in risk of injury; and/or

q. Failure to provide Plaintiff, reasonable hours of employment to not overwork them to the point of not being physically fit to carry out their duties, as Defendant's crew, including Plaintiff, were overworked to the point of fatigue; and/or

r. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Plaintiff, while engaged in the course of his employment on said vessel; and/or

s. Failure to adhere to the Seafarers' Hours of Work and the Manning of Ships Convention, l996, with respect to the hours of work and rest, as well as other standards, such as ILO 147; and/or

t. Failure to have a proper, adequate and safe Safety Management System Manual and/or violating the International Safety Management Code; and/or

u. Failing to consider Plaintiff's physical limitations in assigning him to duties for which he was not physically suited. See *Fletchis v. Union Pacific Railroad*, 621 F. 2d 902, 909 (8th Cir. 1980); Moreno, supra; and/or

v. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's

underlying medical condition when he presented to the vessel's medical center and as he continued to complain as his medical condition and related injuries became aggravated; and/or

w.  Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical conditions and related injuries; and/or

x.  Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers onboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

y.  Failure to provide a safe place to work by failure to have the ship's doctors, shoreside doctors and supervisors communicate with each other about the physical capacities of the Plaintiff and the type of complaints he was expressing regarding his physical condition, and failure to properly evaluate his physical injuries and capabilities and then determine the appropriateness of the various job tasks and activities that would be required of the Plaintiff if he was returned to work; and/or

z.  Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care; and/or

aa. Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured; and/or

bb. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work; and/or

cc. Creating a work environment where crewmembers are encouraged to return to work with injuries; and/or

dd. Failure to warn Plaintiff of the dangers of working with a medical injury; and/or

ee. Negligently assigning Plaintiff to work that caused injury to his back, right shoulder and stomach; and/or

ff.  Negligently requiring Plaintiff to stand for long periods of time; and/or

gg. Negligently requiring Plaintiff to lift overloaded trays, which were unreasonably heavy; and/or

hh. Failure to provide the Plaintiff with protective equipment to prevent injury to his back, right shoulder and stomach; and/or

ii.  Failure to provide assistive devices including but not limited to a trolley; and/or

jj.  Negligently sending Plaintiff back to work on full duty despite that he was suffering from an injury; and/or

▪ **BILLERA LAW** ▪

kk. Requiring Plaintiff to perform kitchen duty alone, without assistance and/or under severe time pressure; and/or

ll. By vicarious liability of the crewmembers who overloaded the trays;

mm. By failing to provide prompt, proper, and adequate medical care and treatment, which Defendant in failing to provide Plaintiff adequate time off work and light duty following the injury to his back, right shoulder and stomach which caused, contributed to or aggravated his condition; and/or

nn. Other acts and/or omissions constituting negligence that will be found in discovery and proven at trial.

91. Defendant, MSC S.A., knew or should have known of the foregoing conditions and had the opportunity to correct them prior to MR. LACKWOOD WILSON's accident/injury.

92. Defendant, MSC S.A., had actual and/or constructive notice that the duties assigned to Plaintiff without proper equipment such as a trolley or other assistance or rest was dangerous prior to Plaintiff's injury.

93. As a direct and proximate result of the negligence of the Defendant, its agents and/or employees, MR. LACKWOOD WILSON, was caused to suffer severe bodily injury, was and still is incapacitated from work, will in the future be unable to engage in his vocation as a crewmember and/or any other occupation requiring the full use of his body and limbs.

94. As a further direct and proximate result of this injury suffered by MR. LACKWOOD WILSON, the Plaintiff has and will suffer pain and mental anguish and has incurred medical expenses for the alleviation of his injuries, suffered a diminishment of earning capacity as well as lost wages and has lost the enjoyment of leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so

triable.

**COUNT IV- UNSEAWORTHINESS AGAINST MSC CRUISES, S.A.**

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

95.    Defendant, MSC CRUISES, S.A, as the vessel owner *pro hac vice* and/or operator of the M/V *MSC VIRTUOSA*, owed MR. LACKWOOD WILSON, who was a seaman and assigned to said vessel, the absolute nondelegable duty to provide a seaworthy vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S. Ct. 926 (1960). The duty to provide a seaworthy vessel includes the duty to furnish a vessel and appurtenances reasonably fit for their intended use. *Id.* The duty is not any less with respect to a temporary unseaworthy condition. *Id.*

96.    In early July, 2022, and thereafter, the Plaintiff was injured as a direct and proximate result of MSC CRUISES, S.A.'s breach of its duty to provide a seaworthy vessel. The M/V *MSC VIRTUOSA* was unseaworthy in the following respects:

    a.  The subject vessel had an improper method of operation, including repetitive heavy lifting without assistance by other personnel and/or equipment created a dangerous condition;

    b.  The kitchen was not reasonably fit for its intended purpose;

    c.  The vessels crew were not properly trained, instructed, and/or supervised;

    d.  The job methods and procedures were not reasonably fit for the intended purposes as they posed an unsafe method of operation and an unreasonable risk of injury;

    e.  The vessel was shorthanded;

    f.  The vessel did not have a fit crew;

    g.  Plaintiff was not provided with sufficient or proper equipment or manpower to perform his duties;

    h.  That said vessel was permitted and allowed to go upon the waters in an unsafe and unseaworthy condition and that such condition of said vessel and any and all damage and injuries were done occasioned and occurred with the privity and

knowledge of the Defendant, its corporate officers, agents, servants or employees at or prior to the time of the commencement of the voyage;

i.  Defendant and its corporate officers, servants, agents, employees and other persons for whom the Defendant is responsible failed to take suitable precautions for the Plaintiff under the circumstances and conditions then existing which were within the knowledge of the Defendant. Said Defendant had actual and constructive notice of unsafe, dangerous, and unseaworthy conditions;

j.  The vessel had an unsafe and unfit method of operation that sent injured crewmembers, including Plaintiff, back to work in an injured condition, aggravating and exacerbating their conditions;

k.  The vessel lacked adequate and fit medical crew to address Plaintiff's injuries;

l.  The ship's physicians were not properly trained, educated, or experienced in the diagnosis of back, right shoulder and stomach injuries;

m.  The trays were overloaded by other crewmembers and were too heavy and too bulky to be safely moved by one crewmember without an assistive device, and therefore were unreasonably dangerous;

n.  Plaintiff was not provided a back belt, rendering the vessel unseaworthy;

o.  Plaintiff's supervisors were not properly trained, educated or experienced in the review of crewmember medical care to ensure that Defendant's crewmembers, including the Plaintiff herein, receive prompt, proper and adequate medical treatment; and

p.  Other acts and/or omissions of unseaworthiness that will be found in discovery and proven at trial.

97.    As a direct and proximate result of the unseaworthiness of the vessel, MR. LACKWOOD WILSON, was caused to suffer severe bodily injury, was and still is incapacitated from work, and will in the future be unable to engage in Plaintiff's vocation as a boat worker and/or any other occupation requiring the full use of his body and limbs.

98.    As a further direct and proximate result of the unseaworthiness of the vessel and the injuries suffered by MR. LACKWOOD WILSON, the Plaintiff has and will continue to suffer pain and mental anguish and has incurred medical expenses for the alleviation of his injuries, suffered a diminishment of earning capacity as well as lost wages and has lost the enjoyment of

leading a normal life, all of which injuries are permanent and continuing in nature.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

### COUNT VI- MAINTENANCE AND CURE CLAIM AGAINST MSC MALTA

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

99.     Maintenance and cure is an ancient legal duty that obligates a vessel owner to provide for a seaman who becomes ill or injured in the service of the ship. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962); *Varela v. Dantor Cargo Shipping, Inc.*, 2017 WL 7184605, at *2 (S.D. Fla. Nov. 14, 2017); *Ramirez v. Carolina Dream, Inc.*, 760 F.3d 119, 122 (1st Cir. 2014).

100.    The Defendant, MSC MALTA, owes its crewmembers, including MR. LACKWOOD WILSON, the duty to provide maintenance and cure if said crewmembers are injured while in the service of the ship. *Garay v. HOLLAND*, 904 F.2d 1527, 1529 (11th Cir. 1990). The obligation to provide maintenance and cure is an implied provision in maritime employment contracts. *Id.* (quoting *Aguilar v. Std. Oil Co.*, 318 U.S. 724, 730, 63 S. Ct. 930, 933-34 (1943)). The duty to provide maintenance and cure continues until a seaman, such as Plaintiff, is unequivocally declared to have reached maximum medical improvement, or "MMI". *Id.* (citing *Vella v. Ford Motor Co.*, 421 U.S. 1, 4-6, 95 S. Ct. 1381, 1383-84 (1975)).

101.    Additionally, or in the alternative, MSC MALTA undertook the duty to provide MR. LACKWOOD WILSON with medical care and maintenance and cure benefits for a short time following his injuries.

102.    Under the General Maritime Law, Plaintiff, as a seaman, was and still is entitled to recover maintenance (found, food & lodging) and cure (medical care) from the shipowner and/or the employer until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance & cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer.

103.    The obligation to provide maintenance & cure imposes an affirmative obligation to seek out and arrange appropriate medical care for seamen such as MR. LACKWOOD WILSON.

104.    To be effective an MMI declaration must be unequivocal. Any doubts or controversy regarding whether the seaman has achieved MMI must be resolved in favor of the seaman.

105.    Defendant, MSC MALTA, has not obtained a maximum medical cure declaration for Plaintiff's medical conditions. To date, MR. LACKWOOD WILSON has not reached MMC and no doctor has declared that Plaintiff has achieved MMC.

106.    Defendant, MSC MALTA, failed to properly assess MR. LACKWOOD WILSON's stomach condition.

107.    Defendant, MSC MALTA, failed to properly assess MR. LACKWOOD WILSON's back condition.

108.    Defendant, MSC MALTA, failed to properly assess MR. LACKWOOD WILSON's right shoulder condition.

109.    MSC MALTA has not provided or even attempted to provide MR. LACKWOOD WILSON any of his overdue maintenance & cure.

110.    MR. LACKWOOD WILSON is owed maintenance and cure for any condition that

▪ **BILLERA LAW** ▪

arises or manifests or occurs while he is in the service of the vessel until the point where he has been declared to be at maximum medical cure, even if the condition arises while Plaintiff is shoreside obtaining medical treatment. *Duarte v. HOLLAND AMERICA LINE, NV*, 761 So. 2d 367, 368 (Fla. 3d DCA 2000).

111.    At all times material hereto, MSC MALTA arbitrarily, willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure; and/or willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI.

112.    As a result of the Defendant MSC MALTA's failure to provide maintenance and cure, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, inconvenience, aggravation of any previously existing condition, medical expenses for the care and treatment of his injuries in the past and for the foreseeable future, suffered physical handicap, past and future lost wages, past and future loss of earning capacity, loss of found, and his working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

113.    MR. LACKWOOD WILSON has retained an attorney to enforce his maintenance and cure rights and remedy Defendant's breach of its maintenance and cure obligations, and he is entitled to his attorney's fees for the obtaining of said benefits.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT VII- MAINTENANCE AND CURE CLAIM AGAINST MSC UK

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

114.    Maintenance and cure is an ancient legal duty that obligates a vessel owner to provide for a seaman who becomes ill or injured in the service of the ship. *Vaughan v. Atkinso*n, 369 U.S. 527, 531 (1962); *Varela v. Dantor Cargo Shipping, Inc*., 2017 WL 7184605, at *2 (S.D. Fla. Nov. 14, 2017); *Ramirez v. Carolina Dream, Inc*., 760 F.3d 119, 122 (1st Cir. 2014).

115.    The Defendant, MSC UK, owes its crewmembers, including MR. LACKWOOD WILSON, the duty to provide maintenance and cure if said crewmembers are injured while in the service of the ship. *Garay v. HOLLAND*, 904 F.2d 1527, 1529 (11th Cir. 1990). The obligation to provide maintenance and cure is an implied provision in maritime employment contracts. *Id.* (quoting *Aguilar v. Std. Oil Co.*, 318 U.S. 724, 730, 63 S. Ct. 930, 933-34 (1943)). The duty to provide maintenance and cure continues until a seaman, such as Plaintiff, is unequivocally declared to have reached maximum medical improvement, or "MMI". *Id.* (citing *Vella v. Ford Motor Co.*, 421 U.S. 1, 4-6, 95 S. Ct. 1381, 1383-84 (1975)).

116.    Additionally, or in the alternative, MSC UK undertook the duty to provide MR. LACKWOOD WILSON with medical care and maintenance and cure benefits for a short time following his injuries.

117.    Under the General Maritime Law, Plaintiff, as a seaman, was and still is entitled to recover maintenance (found, food & lodging) and cure (medical care) from the shipowner and/or the employer until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance & cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the

contract or voyage, whichever is longer.

118.    The obligation to provide maintenance & cure imposes an affirmative obligation to seek out and arrange appropriate medical care for seamen such as MR. LACKWOOD WILSON.

119.    To be effective an MMI declaration must be unequivocal. Any doubts or controversy regarding whether the seaman has achieved MMI must be resolved in favor of the seaman.

120.    Defendant, MSC UK, has not obtained a maximum medical cure declaration for Plaintiff's medical conditions. To date, MR. LACKWOOD WILSON has not reached MMC and no doctor has declared that Plaintiff has achieved MMC.

121.    Defendant, MSC UK, failed to properly assess MR. LACKWOOD WILSON's right shoulder condition.

122.    Defendant, MSC UK, failed to properly assess MR. LACKWOOD WILSON's back condition.

123.    Defendant, MSC UK, failed to properly assess MR. LACKWOOD WILSON's stomach condition.

124.    MSC UK has not provided or even attempted to provide MR. LACKWOOD WILSON any of his overdue maintenance & cure.

125.    MR. LACKWOOD WILSON is owed maintenance and cure for any condition that arises or manifests or occurs while he is in the service of the vessel until the point where he has been declared to be at maximum medical cure, even if the condition arises while Plaintiff is shoreside obtaining medical treatment. *Duarte v. HOLLAND AMERICA LINE, NV*, 761 So. 2d 367, 368 (Fla. 3d DCA 2000).

126.    At all times material hereto, MSC UK, arbitrarily, willfully and callously delayed,

failed and/or refused to pay Plaintiff's entire maintenance and cure; and/or willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI.

127.    As a result of the Defendant MSC UK's failure to provide maintenance and cure, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, inconvenience, aggravation of any previously existing condition, medical expenses for the care and treatment of his injuries in the past and for the foreseeable future, suffered physical handicap, past and future lost wages, past and future loss of earning capacity, loss of found, and his working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

128.    MR. LACKWOOD WILSON has retained an attorney to enforce his maintenance and cure rights and remedy Defendant's breach of its maintenance and cure obligations, and he is entitled to his attorney's fees for the obtaining of said benefits.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

**COUNT VIII- MAINTENANCE AND CURE CLAIM AGAINST MSC S.A.**

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

129.    The Defendant, MSC S.A., as the vessel owner, owes its crewmembers, including MR. LACKWOOD WILSON, the duty to provide maintenance and cure if said crewmembers are

injured while in the service of the ship. *Garay v. HOLLAND*, 904 F.2d 1527, 1529 (11th Cir. 1990); *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 375 (5th Cir. 1981).

130.     The obligation to provide maintenance and cure arises directly out of the connection between the crewmember and a vessel, even where the crewmember has a different Jones Act employer. The duty to provide maintenance and cure continues until a seaman, such as Plaintiff, is unequivocally declared to have reached maximum medical improvement, or "MMI". *Id.* (citing *Vella v. Ford Motor Co.*, 421 U.S. 1, 4-6, 95 S. Ct. 1381, 1383-84 (1975)).

131.     Additionally, or in the alternative, MSC S.A., undertook the duty to provide MR. LACKWOOD WILSON with medical care and maintenance and cure benefits for a short time following his injuries.

132.     Under the General Maritime Law, Plaintiff, as a seaman, was and still is entitled to recover maintenance (found, food & lodging) and cure (medical care) from the shipowner and/or the employer until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance & cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer.

133.     The obligation to provide maintenance & cure imposes an affirmative obligation to seek out and arrange appropriate medical care for seamen such as MR. LACKWOOD WILSON.

134.     To be effective an MMI declaration must be unequivocal. Any doubts or controversy regarding whether the seaman has achieved MMI must be resolved in favor of the seaman.

135.     Defendant, MSC S.A., has not obtained a maximum medical cure declaration for Plaintiff's medical conditions. To date, MR. LACKWOOD WILSON has not reached MMC and

no doctor has declared that Plaintiff has achieved MMC.

136.    Defendant, MSC S.A., failed to properly assess MR. LACKWOOD WILSON's right shoulder condition.

137.    Defendant, MSC S.A., failed to properly assess MR. LACKWOOD WILSON's back condition.

138.    Defendant, MSC S.A., failed to properly assess MR. LACKWOOD WILSON's stomach condition.

139.    MSC S.A., has not provided or even attempted to provide MR. LACKWOOD WILSON any of his overdue maintenance & cure.

140.    MR. LACKWOOD WILSON is owed maintenance and cure for any condition that arises or manifests or occurs while he is in the service of the vessel until the point where he has been declared to be at maximum medical cure, even if the condition arises while Plaintiff is shoreside obtaining medical treatment. *Duarte v. HOLLAND AMERICA LINE, NV*, 761 So. 2d 367, 368 (Fla. 3d DCA 2000).

141.    At all times material hereto, MSC S.A., arbitrarily, willfully and callously delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure; and/or willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI.

142.    As a result of the Defendant MSC S.A.'s failure to provide maintenance and cure, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, inconvenience, aggravation of any previously existing condition, medical expenses for the care and treatment of his injuries in the past and for the foreseeable future, suffered physical handicap, past and future lost wages, past

and future loss of earning capacity, loss of found, and his working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

143.    MR. LACKWOOD WILSON has retained an attorney to enforce his maintenance and cure rights and remedy Defendant's breach of its maintenance and cure obligations, and he is entitled to his attorney's fees for the obtaining of said benefits.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT IX- FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE MEDICAL CARE AGAINST MSC MALTA

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

144.    Under the Jones Act, Defendant, MSC MALTA, as Plaintiff's Jones Act employer, owed the duty to provide prompt, proper and adequate medical care to its seamen, including MR. LACKWOOD WILSON, who fall ill or suffer injury in the service of a vessel. *De Zon v. American President Lines*, 318 U.S. 660, 667–68, 63 S. Ct. 814, 87 L. Ed. 1065 (1943); *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587 (5th Cir. 1978).

145.    Defendant MSC MALTA's negligent failure to provide prompt, proper and adequate medical care gives rise to a Jones Act claim separate from MR. LACKWOOD WILSON's Jones Act negligence claims for the fall incident itself, and separate from Defendant's failure to provide maintenance and cure. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 422-23, 129 S. Ct. 2561, 2574 (2009) (citing *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374-

75, 53 S. Ct. 173, 175-76 (1932)); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 685 (10th Cir. 1981) ("Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief.").

146.    Defendant negligently failed to provide MR. LACKWOOD WILSON with prompt, proper, adequate, and complete medical care. MSC MALTA's negligent conduct includes, but is not limited to the following:

  a.   Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition(s) and related injuries when he presented to the vessel's medical center and as he continued to complain as his condition/medical injuries became aggravated; and/or

  b.   Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical condition(s) and related injuries; and/or

  c.   Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

  d.   Failure to utilize proper and adequate medical equipment with which to provide Plaintiff proper and adequate medical care; and/or

  e.   Failure to properly medically manage Plaintiff's medical care after he became injured by Defendants; and/or

  f.   Failure to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his underlying medical condition and caused him medical injuries and additional pain and disability; and/or

  g.   Negligently sending Plaintiff back to work in an injured condition; and/or

  h.   Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

  i.   Failure to assess Plaintiff's right shoulder condition; and/or

  j.   Failure to assess Plaintiff's back condition; and/or

  k.   Not reimbursing and/or not timely reimbursing Plaintiff for his out-of-pocket medical expenses, and/or

  l.   Not authorizing and/or providing Plaintiff with prompt shoreside medical care, and/or

▪ **BILLERA LAW** ▪

      m.  Prematurely terminating Plaintiff's medical care.

147.    As a direct and proximate result of Defendant, MSC MALTA's failure to provide Plaintiff with prompt, proper and adequate medical treatment, MR. LACKWOOD WILSON suffered additional pain, suffering, and disability, aggravation of his underlying injury, and Plaintiff's recovery is prolonged.

148.    In addition, MR. LACKWOOD WILSON, was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of a previously existing condition, incurred additional medical expenses, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT X- FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE MEDICAL CARE AGAINST MSC UK

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

149.    Under the Jones Act, Defendant, MSC UK, as Plaintiff's borrowing employer, owed the duty to provide prompt, proper and adequate medical care to its seamen, including MR. LACKWOOD WILSON, who fall ill or suffer injury in the service of a vessel. *De Zon v. American*

*President Lines*, 318 U.S. 660, 667–68, 63 S. Ct. 814, 87 L. Ed. 1065 (1943); *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587 (5th Cir. 1978).

150.     Defendant MSC UK's negligent failure to provide prompt, proper and adequate medical care gives rise to a Jones Act claim separate from MR. LACKWOOD WILSON's Jones Act negligence claims for the fall incident itself, and separate from Defendant's failure to provide maintenance and cure. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 422-23, 129 S. Ct. 2561, 2574 (2009) (citing *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374-75, 53 S. Ct. 173, 175-76 (1932)); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 685 (10th Cir. 1981) ("Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief.").

151.     Defendant negligently failed to provide MR. LACKWOOD WILSON with prompt, proper, adequate, and complete medical care. MSC UK's negligent conduct includes, but is not limited to the following:

   a.   Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition(s) and related injuries when he presented to the vessel's medical center and as he continued to complain as his condition/medical injuries became aggravated; and/or

   b.   Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical condition(s) and related injuries; and/or

   c.   Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

   d.   Failure to utilize proper and adequate medical equipment with which to provide Plaintiff proper and adequate medical care; and/or

   e.   Failure to properly medically manage Plaintiff's medical care after he became injured by Defendants; and/or

   f.   Failure to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his underlying medical condition and caused him medical injuries and additional pain and disability; and/or

g.   Negligently sending Plaintiff back to work in an injured condition; and/or

h.   Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

i.   Not reimbursing and/or not timely reimbursing Plaintiff for his out-of-pocket medical expenses, and/or

j.   Not authorizing and/or providing Plaintiff with prompt shoreside medical care, and/or

k.   Prematurely terminating Plaintiff's medical care.

152.   As a direct and proximate result of Defendant, MSC UK's failure to provide Plaintiff with prompt, proper and adequate medical treatment, MR. LACKWOOD WILSON suffered additional pain, suffering, and disability, aggravation of his underlying injury, and Plaintiff's recovery is prolonged.

153.   In addition, MR. LACKWOOD WILSON, was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of a previously existing condition, incurred additional medical expenses, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

▪ **BILLERA LAW** ▪

## COUNT XI- FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE MEDICAL CARE AGAINST MSC SA

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

154.    Under the Jones Act, Defendant, MSC S.A., as Plaintiff's borrowing employer, owed the duty to provide prompt, proper and adequate medical care to its seamen, including MR. LACKWOOD WILSON, who fall ill or suffer injury in the service of a vessel. *De Zon v. American President Lines*, 318 U.S. 660, 667–68, 63 S. Ct. 814, 87 L. Ed. 1065 (1943); *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587 (5th Cir. 1978).

155.    Defendant MSC S.A.'s negligent failure to provide prompt, proper and adequate medical care gives rise to a Jones Act claim separate from MR. LACKWOOD WILSON's Jones Act negligence claims for the fall incident itself, and separate from Defendant's failure to provide maintenance and cure. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 422-23, 129 S. Ct. 2561, 2574 (2009) (citing *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374-75, 53 S. Ct. 173, 175-76 (1932)); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 685 (10th Cir. 1981) ("Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief.").

156.    Defendant negligently failed to provide MR. LACKWOOD WILSON with prompt, proper, adequate, and complete medical care. MSC S.A.'s negligent conduct includes, but is not limited to the following:

   a.  Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition(s) and related injuries when he presented to the vessel's medical center and as he continued to complain as his condition/medical injuries became aggravated; and/or

   b.  Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical condition(s) and related injuries; and/or

## ▪ BILLERA LAW ▪

c. Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

d. Failure to utilize proper and adequate medical equipment with which to provide Plaintiff proper and adequate medical care; and/or

e. Failure to properly medically manage Plaintiff's medical care after he became injured by Defendants; and/or

f. Failure to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his underlying medical condition and caused him medical injuries and additional pain and disability; and/or

g. Negligently sending Plaintiff back to work in an injured condition; and/or

h. Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

i. Not reimbursing and/or not timely reimbursing Plaintiff for his out-of-pocket medical expenses, and/or

j. Not authorizing and/or providing Plaintiff with prompt shoreside medical care, and/or

k. Failure to provide the surgery recommended by Plaintiff's treating physicians; and/or

l. Prematurely terminating Plaintiff's medical care.

157. As a direct and proximate result of Defendant, MSC S.A.'s failure to provide Plaintiff with prompt, proper and adequate medical treatment, MR. LACKWOOD WILSON suffered additional pain, suffering, and disability, aggravation of his underlying injury, and Plaintiff's recovery is prolonged.

158. In addition, MR. LACKWOOD WILSON, was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of a previously existing condition, incurred additional

medical expenses, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, demands all damages allowed under the general maritime law, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

### COUNT XII- DISABILITY BENEFITS UNDER MSC's CBA

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

159.     Plaintiff's injuries arose from a work-related lifting accident onboard Defendants' ship. He is no longer able to work as a seaman with his current restrictions.

160.     Defendants' Collective Bargaining Agreement, Article 17 (1), provides:

A seafarer who suffers injury as a result of an accident, regardless of fault but excluding injuries caused by a seaferers willful act, whilst in the employment of the vessel, including accidnts occurring whilst traveling to or from the vessel and whose ability to work is reduced as a result thereof, shall in addition to his sick pay be entitled to compensation according to the provisions of this Article […]

| Degree of Permanent Disability: | Rate of Compensation: | |
| --- | --- | --- |
| | Ratings | Officers |
| % USD | USD | USD |
| 100 | 90,000 | 110,000 |
| 75 | 67,500 | 82,500 |
| 60 | 54,000 | 66,000 |
| 50 | 45,000 | 55,000 |

| 40 | 36,000 | 44,000 |
| 30 | 27,000 | 33,000 |
| 20 | 18,000 | 22,000 |
| 10 | 9,000 | 11,000 |

with any differences, including less than 10% disability, to be pro-rated.

A Seafarer whose disability, is assessed at 50% or more shall, for the purpose of this Article, be regarded as permanently unfit for further sea service in any capacity and be entitled to 100% compensation. Furthermore, any Seafarer assessed at less than 50 % disability but certified as permanently unfit for further sea service in any capacity by the company-nominated doctor, shall also be entitled to 100% compensation. Any disagreement as to entitlement under this clause shall be resolved in accordance with the procedures set forth in this Article.

161.    Under the CBA, Plaintiff is entitled to compensation for his injuries. Due to the fact

that he has suffered the above injuries at work, he will not be capable of working as a seaman any

longer. Therefore, under MSC's CBA, Plaintiff is entitled to $90,000 in disability benefits.

162.    Said benefits should not be offset against Plaintiff's medical care that is owed. The

CBA states separately, at Article 14, that:

In the case of injury a seafarer shall be entitled to medical assistance (including hospitalization) at the Company's expense provided that such treatment is necessary to improve his medical condition and such medical assistance will cease where the seafarer has reached maximum medical improvement for his injuries or it has been determined in accordance with Article 17 that the seafarer is disabled and disability compensation will be paid or the seafarer has been held by a doctor nominated by the Company to be permanently unfit for further seagoing duties.

163.    Plaintiff therefore has an independent right to his medical care separate and apart

from his claim for disability benefits.

WHEREFORE Plaintiff, TREVOR WINWRITH LACKWOOD WILSON, sues and

demands judgment against the Defendant for all damages and benefits as allowed under the

contractual provisions of the operative Collective Bargaining Agreement, under the general

▪ **BILLERA LAW** ▪

maritime law, and for any other damages, including but not limited to compensatory damages, court costs, interest, and prejudgment interest, and demands trial by jury of all issues so triable.

## COUNT XIII- NEGLIGENCE AGAINST DEFENDANTS UNDER PANAMANIAN LAW

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

164.    In the event that this Court rules US General Maritime law does not apply, Plaintiff brings a cause of action pursuant to Chapter 7, Title I of Law Decree No. 8 of 1998, Articles 80 through 83, CL-001, Executive Decree 86 of 2006, and Articles 1644-A and 1645 of the Civil Code of Panama against Defendants MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A.

165.    Further, Civil Code Art 986 provides: Those who in the performance of their obligations incur in fraud, negligence, or late payment, and those who in any way contravene the tenor of such obligations, shall be subject to indemnification for the damages caused.

166.    The conditions for a Tort action under Panamanian law require a Plaintiff to establish:

        a.   That he's suffering a damage or injury; and
        b.   That the damage was the result of negligent act or omission imputable to ship-owner; and
        c.   That there is a direct causation between the damage and the negligent conduct.

167.    While the term "negligence" is not specifically defined under Panama law, it is generally understood to mean the exercise of reasonable care or ordinary prudence under the circumstances.

168.    Defendants, when exercising its duty to exercise reasonable care or ordinary prudence, should have ensured that equipment and facilities available to seafarers onboard are safe

and in good condition in order to prevent any incident and/or accident.

169.    In early July, 2022, and thereafter, MR. LACKWOOD WILSON suffered an injury to his back, right shoulder and stomach when he was ordered to lift unreasonably heavy trays that were overloaded by other crewmembers. Plaintiff was provided protection no assistance for handling the unreasonably heavy, overloaded trays, including but not limited to a trolley

170.    During or near his last lift, MR. LACKWOOD WILSON felt a sharp pain in his right shoulder, back and stomach.

171.    His condition was not deemed significant enough to take him off duty. Rather, he was placed back on full duty, working as stated above, and aggravating his condition.

172.    Plaintiff was severely injured by Defendants failure to provide him adequate medical care.

173.    To date, Plaintiff's right shoulder and back condition has never been properly diagnosed or treated.

174.    The severity of his conditions more than likely could have been avoided if Plaintiff had been given proper medical treatment following the first signs of his condition In early July, 2022.

175.    Plaintiff was severely injured by Defendants failure to properly investigate his medical condition and accurately diagnose his condition.

176.    Plaintiff continues to require medical treatment for his right shoulder condition.

177.    Plaintiff continues to require medical treatment for his back condition.

178.    Plaintiff continues to require medical treatment for his stomach condition.

179.    Defendants had a duty to provide proper medical care and to monitor said medical care under Panamanian law.

180.    Plaintiff is entitled to receive compensation pursuant to Panamanian law for all damages arising from Defendants' negligence.

181.    Plaintiff is entitled to receive compensation pursuant to Panamanian law for all damages arising from Defendants' negligence.

182.    Defendants have breached their obligation to compensate Plaintiff to date.

183.    As a result of Defendants' failure to compensate Plaintiff, he is suffering from economic hardship.

184.    Plaintiff's injuries are due to the fault and negligence of Defendants, MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A., as follows:

   a.   Failure to use reasonable care to prevent occupational hazards, including back, right shoulder and stomach injuries from extremely strenuous activities as those to which Plaintiff was exposed;

   b.   Failure to comply with Law Decree No. 8 of 1998, Chapter 9, Art. 113, "Prevention of Seafarer's Labor Accidents," which requires the shipowner to prevent accidents;

   c.   Failure to issue and institute regulations for the safety and prevention of shore side medical negligence;

   d.   Failure to provide Plaintiff medical care;

   e.   Failure to properly monitor Plaintiff's medical care; and

   f.   Failure to reassign Plaintiff to less strenuous activities following him suffering injuries to his back, right shoulder and stomach injuries.

185.    As a direct and proximate result of the foregoing breach of obligation by Defendants the Plaintiff sustained severe and permanent injury and disability to his back, right shoulder and stomach, and psychological and emotional damages.

WHEREFORE, Plaintiff demands judgement against Defendants MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A.,

for compensatory damages, pain, suffering, lost wages, loss of future earning capacity, and the costs of future medical care, and including attorney's fees and costs, and prejudgment interest and request a trial on all issues so triable.

**COUNT XIV**
**BREACH OF CONTRACTUAL OBLIGATIONS UNDER PANAMANIAN LAW**

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through seventy-six (76) as though they were fully set forth herein and further alleges:

186.     Executive Law Decree n°86 of February 22, 2013 transposing into Panamanian laws the Maritime Labour Convention, 2006, provides:

187.     Article 5: All Shipowners of vessels with Panamanian registration shall ensure equity of life and work conditions for both nationals as well as foreigners who work on board the vessels.

188.     Article 7: In case of conflict between two parties regarding the applicability or interpretation of regulatory or supplementary provisions or in International Conventions, the provision or interpretation most favorable to seafarers shall prevail.

189.     Article 170: Shipowners shall be responsible for protecting the health of, and providing medical care to, all Seafarers who render services on board their vessels.

190.     Article 171: Shipowners must bear the costs of illnesses or accidents of all Seafarers employed in their vessel occurred between the date of initiating service and the date considered as the date when Seafarers have been duly repatriated, or that derive from the employment carried out between those dates.

191.     Article 172: Shipowners must provide insurance coverage in order to guarantee the payment of an indemnity in the event of death or long-term disability of Seafarers, as a result of a work accident, illness or occupational risk.

▪ **BILLERA LAW** ▪

192.     Article 173: Shipowners must bear, directly or through an insurance, the expenses for medical care, including any medical treatment, surgery, hospitalization, necessary medicines and therapeutic devices, as well as accommodation and food away from home until recuperation of ill or injured Seafarers, or until the permanent nature of the illness or disability has been proven.

193.     Article 174: Shipowners must bear all funeral costs in the event of death onboard or ashore during the employment period.

194.     Article 175: The Shipowner's liability with regards to medical care expenses, hospitalization, accommodation and food shall extend for sixteen (16) weeks as of the date on which the injury took place or the start of the illness.

195.     Article 176: When the illness or injury incapacitates a Crewmember for work, the Shipowner must pay the totality of the wage while the ill or injured Seafarer is onboard, or until recovery, if occurred first. Benefits may be excluded from this payment.

196.     Article 177: Shipowners shall be exempted from all liability in the following events:

197.     When the injury has not occurred as a result of service on the vessel.

198.     When the injury or illness is attributed to the deliberate, improper conduct of the ill, injured or deceased Seafarer.

199.     When the illness or physical deficiency are intentionally hidden at the time of employment.

200.     Article 178: For the purposes of applying this Executive Decree, the following shall not be considered work accidents:

201.     An accident deliberately caused by the Seafarer.

202.     An accident caused by the Seafarer's negligence, being considered as such a

verified disobedience to an expressed order, the culpable or obvious non-compliance with the rules for the prevention of accidents and safety, voluntary drunkenness, and the use of illicit drugs.

203.    Article 180: It is the Shipowner's obligation to adopt effective safety and health policies and programs at work, including an evaluation of risk, as well as training and education of Seafarers, with the purpose of preventing work accidents, professional injuries or illnesses, including measures to reduce and prevent the risk of exposure on damaging levels to environmental factors and chemical substances, as well as the risk of injuries or illnesses that may derive from the use of equipment and machinery onboard the vessel.

204.    Article 181: Shipowners must be under the obligation to provide Seafarers with protective equipment and other devices for the prevention of accidents, together with rules for the use of said protection equipment or devices.

205.    Article 182: Shipowners must be under the obligation to ensure that machinery used onboard is properly protected, and to ban the use of machinery that lack the adequate protection devices.

206.    Article 183: Vessels that have at least five Seafarers on board must create a Safety Committee comprised by Crewmembers.

207.    The Safety Committee must ensure the continuous improvement of protection and health at work, taking into consideration preventive measures that include the control of engineering and design, the use of the personal protection equipment, as well as the requirements for inspecting, notifying and correcting any unsafe conditions and investigating and notifying any work accidents onboard.

208.    Article 185: Shipowners must be under the obligation to report the occurrence of any work accident to the Competent Authority, as well as any injuries and occupational illnesses

in a proper manner, taking into consideration the guidelines provided by the International Labour Organization with regards to notification and recording of work accidents and occupational illnesses.

209.     In early July, 2022, Plaintiff suffered back, right shoulder and stomach injuries while in Defendants' service as a crewmember and seaman.

210.     As a result, Defendants had an obligation to provide contractual compensation for Plaintiff that arises under Law Decree No. 8 of 1998, Articles 86, 87. CL-001.

211.     Per the articles stated above, and Article 87 of Law Decree No. 8 of 1998, the shipowner is required to provide "assistance to the crewmember until [she] fully recovers from [her] illness or injury, or until the permanent nature of the illness or disability is confirmed."

212.     Per the articles stated above, and Article 86 of Law Decree No.8 of 1998, the shipowner is also required to provide Plaintiff assistance with: a) The cost of medical, surgical and hospital expenses, and the supply of medication and other therapeutic means of good quality and in the amount required by the crewmember," and b) the cost of food and accommodation while receiving the aforementioned medical treatment."

213.     MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A., failed and/or arbitrarily refused to comply with their legal obligations under the articles stated above, and Law Decree No. 8, Articles 86 and 87, by refusing to provide for Plaintiff's medical treatment and the cost of food and accommodations as set forth above.

214.     MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A., is entitled to receive medical assistance including hospitalization, sick pay, and the necessary costs to pay for food and lodging for as long as such assistance is

required because he is not yet recovered from his injury.

215.    MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A., breached its obligation to pay for Plaintiff's medical care and the necessary costs to pay for food and lodging.

216.    MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A. breached their duty to provide Plaintiff with medical assistance, sick pay, and the necessary costs to pay for feeding and lodging which is unreasonable, willful, and in callous disregard for Plaintiff's rights.

217.    MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A are obligated to ensure that Plaintiff receives medical care and costs for food and lodging as a result of his injuries and/or ailments he incurred during his employment with Defendants aboard the MSC CRUISES, S.A.'s cruise ship.

218.    MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A failed to satisfy their obligations to Plaintiff.

219.    As a direct and proximate result of Defendants, MSC MALTA SEAFARERS CO. LTD., MSC CRUISE MANAGEMENT (UK) LTD, and MSC CRUISES, S.A., breach of duty, Plaintiff sustained additional pain, suffering, physical disability, emotional distress, mental duress, loss of the capacity to enjoy life, lost wages, the loss of the ability to earn wages, and the costs of medical care and nursing care and other damages recognized at law.

220.    The compensation tables in Resolution J.D. No. 017/2005 assign value to each injury sustained due to the impossibility to carry out certain functions.

221.    Plaintiff sustained bodily injury as a result of a work accident while he worked for the shipowner, master, and/or employer aboard the Respondent's cruise ships.

222.    Plaintiff's bodily injuries were the result of occupational accidents, which occurred while he was working aboard the Respondent's cruise ships.

223.    Pursuant to the Maritime Authority of Panama Resolution J.D. No. 017/2005, Plaintiff is entitled to compensation for the bodily injuries he sustained while performing services for the shipowner, master, and/or employer aboard the Defendants cruise ship.

224.    Plaintiff is entitled to recover an amount equal to his annual salary multiplied by the percentage value assigned to each injury up to $50,000.00.

225.    Per Plaintiff's medical evidence, he will be completely disabled from further maritime work due to back, right shoulder and stomach conditions caused or aggravated by Respondent's negligence. Therefore, he is entitled to the full $50,000 benefit under Resolution J.D. No. 017/2005.

WHEREFORE, Plaintiff seeks judgment in the amount of US $50,000 plus pre-judgment interest, attorney's fees, and costs; and requests a trial on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims so triable by right.

Respectfully submitted this 1st day of July, 2025.

**BILLERA LAW**
*Attorneys For Plaintiff*
2201 N.W. Corporate Blvd. Suite 200
Boca Raton, FL 33431
T: (561) 500-7777
F: (561) 500-7778
Primary Email: John@Billeralaw.com
Secondary Email: Nigina@Billeralaw.com
Third Email: filing@billeralaw.com
Fourth Email: lenika@billeralaw.com
By:      /S/ JOHN F. BILLERA
          JOHN F. BILLERA, ESQ.
          Florida Bar No.: 869041

▪ **BILLERA LAW** ▪

NOT AN OFFICIAL COPY   PUBLIC ACCESS   NOT AN OFFICIAL COPY